**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **USAA FEDERAL SAVINGS BANK** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA HUMAN RELATIONS COMMISSION** | : | **NO. 10-7220** |

**MEMORANDUM OPINION**

**Savage, J.** **August 23, 2011**

In a case of first impression, we are asked to decide whether a state agency, pursuant to a delegation from a federal agency mandated by federal law, can investigate a federally created savings and loan institution under state antidiscrimination laws. The question is whether the state agency is preempted from enforcing state antidiscrimination laws even though it is doing so pursuant to a federal statute. The case presents an apparent conflict between one federal statute and a regulation issued by a federal agency acting with the authority granted by another federal statute.

USAA Federal Savings Bank ("USAA") brought this action seeking a declaration that it is not subject to the Pennsylvania Human Relations Act's antidiscrimination laws and the Pennsylvania Human Relations Commission ("PHRC")[1] cannot investigate it for violations of Pennsylvania law. It requests an injunction barring the PHRC from investigating it. It contends that the state antidiscrimination statute is preempted by federal law. According to USAA, as a federal savings and loan institution subject to the exclusive oversight and regulation of the Office of Thrift Supervision ("OTS"), it has no obligation to submit to and cooperate with the PHRC's investigation into an allegation that it discriminated against a

[1] The PHRC is the state agency charged with enforcing Pennsylvania's antidiscrimination laws. *See PHRA v. Alto-Reste Park Cemetery Assoc.,* 306 A.2d 881, 887 (Pa. 1973).

loan applicant on the basis of her national origin when it denied her loan application. USAA also contends that the PHRC's investigation is an impermissible exercise of "visitorial powers" in violation of federal law.

The PHRC counters that Pennsylvania's antidiscrimination laws are not preempted because the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631, specifically authorizes state agencies operating under housing regulations "substantially equivalent" to federal law to investigate and prosecute claims of discrimination. It also contends that the OTS regulations do not preempt state antidiscrimination laws and the PHRC's investigation is not visitorial. Therefore, according to the PHRC, USAA is obligated to comply with its investigation of the complaint which a federal agency referred to it pursuant to federal law.

We conclude that the PHRC's investigation pursuant to the Pennsylvania Human Relations Act ("PHRA") is not preempted by federal law. On the contrary, it was mandated by federal law. Given this conclusion, there is no impermissible exercise of visitorial power. Therefore, USAA's motion for judgment will be denied and the PHRC's motion will be granted.[2]

## Background

In May of 2009, Madeline Jacob applied to USAA for a loan to refinance a residential investment property. USAA denied her application, claiming that her debt-to-income ratio was too high and that she did not possess sufficient cash reserves. Jacob then filed a complaint with the United States Department of Housing and Urban

---

[2] Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At a pretrial conference, the parties agreed that the material facts are not in dispute. Because the action may be decided as a matter of law, they were ordered to file cross-motions for summary judgment.

Development ("HUD"), alleging that USAA had discriminated against her on the basis of her national origin. Pursuant to the FHA, HUD referred the complaint to the PHRC.

Upon referral from HUD, the PHRC began an investigation into Jacob's discrimination complaint and requested documents from USAA. After USAA refused to voluntarily produce the documents, the PHRC issued a subpoena.[3] In response, USAA filed this action seeking a declaratory judgment that it was not obligated to comply with the PHRC's investigation.

**Preemption**

Federal preemption of a state law exists in three situations: express preemption, field preemption, and conflict preemption. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (citing *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). Express preemption occurs when a Congressional statute or agency regulation[4] has expressly stated that state law is preempted. *Altria Group Inc. v. Good,* 555 U.S. 70, 76 (2008); *Farina v. Nokia, Inc.,* 625 F.3d 97, 115 (3d Cir. 2010). Field preemption applies when a federal statute or regulations promulgated under it are so pervasive that they completely occupy a field, leaving no room for additional state regulation. *Hillsborough County*, 471 U.S. at 713; *Farina,* 625 F.3d 115. Conflict preemption arises when either compliance with both state and federal requirements is

[3] On August 12, 2010, the PHRC subpoenaed Jacob's loan file and 50 randomly selected files for applicants who submitted loan applications between January 1, 2009 and December 31, 2009. It requested these documents pursuant to its authority under § 957(g)(1) of the PHRA., which grants the PHRC the authority to "subpoena witnesses . . . [and] require the production for examination of any books and papers relating to any matter under investigation." 43 P.S. § 957(g)(1).

[4] Where Congress has delegated the authority to regulate a particular field to an administrative agency, the agency's regulations issued pursuant to that authority have as much preemptive force as the federal statute. *Holk*, 575 F.3d at 339-40.

impossible or the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Holk*, 575 F.3d at 339 (citations omitted).

USAA contends that express preemption applies.[5] It argues that exercising its authority under the Home Owners' Loan Act, 12 U.S.C. § 1461 et seq. (2011) ("HOLA"), the OTS has promulgated regulations that expressly preempt state laws related to the lending and operational activities of federal savings banks. It cites OTS regulations that specifically declare that it is occupying the entire field of lending regulations for federal savings associations. *See* 12 C.F. R. § 560.2(a).

HOLA was enacted by Congress to provide emergency relief for home mortgage debt and as a "radical and comprehensive response to the inadequacies of the existing state systems." *Fidelity Fed. S&L Ass'n v. de la Cuesta,* 458 U.S. 141, 159-60 (1982) (internal quotations and citations omitted). When it created federal savings and loan associations in HOLA, Congress granted the OTS[6] authority to promulgate regulations with respect to the "organization, incorporation, examination, operation, and regulation" of federal savings and loan institutions. 12 U.S.C. § 1464(a)(1). In enacting this legislation, Congress "expressly contemplated, and approved, the [OTS]'s promulgation of regulations superseding state law." *de la Cuesta,* 458 U.S. at 161-62 (internal citations omitted).

Pursuant to this Congressional authority, the OTS has promulgated regulations that preempt "any state law purporting to address the subject of the operations of a Federal

---

[5] In its motion, USAA argued that both express and field preemption were in play. At oral argument, it agreed that only express preemption was the issue.

[6] Regulatory authority for federal savings and loan institutions was initially vested in the Federal Home Loan Bank Board ("Bank Board"). However, in 1989 Congress replaced the Bank Board with the OTS. 12 U.S.C. § 1437, §§ 1441a, 1821.

savings association." 12 C.F.R. § 545.2. Through its regulations, the OTS has made clear that it intends its regulations to occupy the entire field of lending for federal savings associations. 12 C.F.R. § 560.2 (1996) ("To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices . . . OTS hereby occupies the entire field of lending regulation for federal savings associations.").

USAA contends that the HOLA and the OTS regulations preempt the PHRC's investigation. The PHRC counters that this case does not involve preemption because, pursuant to the FHA, it is required by Congress to investigate Jacob's discrimination complaint.[7]

The FHA makes it unlawful "for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction . . . because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). Pursuant to the FHA, HUD is responsible for investigating charges of housing discrimination. The FHA permits the Secretary of HUD to certify local agencies which have local fair-housing laws that are "substantially equivalent" to federal laws. 42 U.S.C. § 3610 (f)(3). Once an agency is certified, the Secretary "shall refer . . . complaint[s] to that certified agency before taking any action with respect to such complaint[s]." § 3610(f)(1).[8] Certified local agencies are

---

[7] The United States filed a statement of interest, arguing that the PHRC's investigation is not preempted because it is mandated by Congress. (Document No. 17).

[8] Pursuant to the FHA, after referral is made to a state agency, HUD is not permitted to take any further action with respect to the complaint unless: "(A) the certified agency has failed to commence proceedings with respect to the complaint before the end of the 30th day after the date of such referral; (B) the certified agency, having so commenced such proceedings, fails to carry forward such proceedings with

responsible for investigating and, if necessary, prosecuting housing discrimination claims. *Mitchell v. Cellone,* 389 F.3d 86, 90 (3d Cir. 2004).

There is no dispute that Jacob filed her discrimination complaint with HUD; HUD referred the complaint to the PHRC; and the PHRC has been certified by HUD as a local agency with fair-housing laws "substantially equivalent" to federal laws.

USAA acknowledges that the FHA permits HUD to refer complaints filed with it to certified state agencies. Nevertheless, it contends that because the OTS has preempted the field of lending regulations for federal savings banks, there can be no referral where it would subject federal savings banks to investigation and enforcement under state law. Thus, USAA argues that it is not subject to the PHRA.

Contrary to USAA's contention, there is no preemption. In these circumstances, the PHRC's investigation is not an exercise of state power. Rather, it is an exercise of federal power which has been delegated to the state. The PHRC is not acting on its own. It is acting pursuant to a congressional mandate. Because the PHRC's investigation into Jacob's discrimination complaint is specifically authorized and required by federal law, it is not subject to federal preemption.

To hold otherwise would render the FHA antidiscrimination provision a nullity and unenforceable where a federal savings and loan institution discriminated. It would frustrate the antidiscrimination enforcement scheme intended by Congress. Indeed, USAA concedes that HUD itself could do what it argues the PHRC cannot. In other words, one federal agency (HUD) could investigate and enforce a federal antidiscrimination statute

---

reasonable promptness; or (C) the Secretary determines that the certified agency no longer qualifies for certification under this subsection with respect to the relevant jurisdiction." 42 U.S.C. § 3610(f)(2).

(FHA) where the charge is made against an entity subject to regulation by another federal agency (OTS). Here, HUD has delegated its responsibility to investigate the complaint to the state agency as required by statute.

USAA argues that the PHRC's investigation into Jacob's complaint is preempted by OTS regulations. Given that we conclude there is no preemption, it is not necessary to reach this argument. Nevertheless, for completeness sake, we shall explain why USAA's argument fails.

The OTS addresses preemption of state laws regulating federal savings institutions in § 560.2 of its regulations. Regulation 560.2(a) states:

> Pursuant to sections 4(a) and 5(a) of HOLA . . . OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), *OTS hereby occupies the entire field of lending regulation for federal savings associations*. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except as to the extent provided in paragraph (c) of this section or § 560.110 of this part. 12 C.F.R. § 560.2(a) (emphasis added).

The OTS instructs how to perform the § 560.2 preemption analysis. It provides:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b) [of § 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with

> paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption. 61 Fed. Reg. 50951-01, 50965-67 (Sept. 30, 1996).

Paragraph (b) of § 560.2 contains a non-exclusive list of state laws that are specifically preempted. Regulation 560.2(c) provides that state laws involving real property that "only incidentally affect the lending operations of Federal savings associations" are not preempted. 12 C.F.R. § 560.2(c).

USAA contends that the PHRA is a state law that is specifically preempted under § 560.2(b). It cites § 560.2(b)(10), which includes among preempted state laws those involving "origination, servicing, sale or purchase of, or investment or participation in, mortgages." § 560.2(b)(10). The PHRC counters that the PHRA does not regulate USAA's ability to process, originate or service mortgages and only has an incidental effect on its credit activities. It does not target federal savings associations.

The PHRA is a state statute prohibiting discrimination in employment, housing and public accommodation. 43 P.S. § 951 et seq. Under the statute, it is illegal to "[r]efuse to lend money . . . or otherwise withhold financing of any housing accommodation or commercial property from any person because of the race, color, familial status, age, religious creed, ancestry, sex, national origin, handicap or disability of any person." 43 P.S. § 955(h)(2). In certifying the PHRA, HUD has acknowledged that the statute is substantially equivalent to federal law.

Regulation 560.2(b)(10) has been interpreted to apply only to state laws "directed at federal savings associations' mortgage lending operations." *Fidelity Nat'l Info. Solutions, Inc. v. Sinclair,* No. 02-6928, 2004 WL 764834, at *13 (E.D. Pa. March 31, 2004) (citations

omitted). “Nothing in HOLA . . . or OTS[ ] regulations indicates that [the] preemption focus was on anything other than state laws specifically targeting federal savings associations.” *Id.*

The PHRA does not impose upon federal savings institutions anything more than federal law does. Other than prohibiting discrimination as the FHA does, nothing in the statute imposes restrictions on federal savings banks’ ability to process, originate or service loans. Moreover, because USAA is already prohibited from discriminating against applicants on the basis of race, color, familial status, age, religion, sex, national origin and disability pursuant to the FHA[9] and the ECOA,[10] compliance with the PHRA does not create any additional burden on its lending operations. *See, e.g., McAnaney v. Astoria Fin. Corp,* 665 F. Supp. 2d 132, 166 (E.D. NY 2009) (“[B]ecause federal thrifts are presumed to act with their borrowers in a truthful manner, Indiana’s general prohibition on deception should have no measurable impact on their lending operations.”) (quoting Opinion of OTS Chief Counsel, P-96-14, Dec. 24, 1996, *available at*, 1996 WL 7667462, at *6). At most, the PHRA only incidentally effects federal savings banks’ lending operations. Thus, we conclude it does not fall within the definition of a state law that is preempted by § 560.2(b)(10).

Even if the PHRA did affect lending operations and would otherwise be preempted by § 560.2, the OTS regulations cannot prohibit a certified state agency from investigating and enforcing discrimination complaints referred to it by HUD. Although the OTS

[9] The FHA prohibits discrimination based on race, color, religion, sex, handicap, familial status, or national origin. 42 U.S.C. § 3605(b).

[10] The ECOA prohibits discrimination based on race, color, religion, national origin, sex, marital status, or age. 15 U.S.C. §§ 1691-1691f.

regulations were promulgated in accordance with authority granted to it by HOLA, that authority does not "transform the regulation into an Act of Congress, nor allow it to prevail over contrary provisions of duly enacted statutes." *See In re Nautilis Motor Tanker Co., Ltd.,* 85 F.3d 105, 112 (3d Cir. 1996). It is "axiomatic that federal regulations can not 'trump' or repeal Acts of Congress." *Id.* at 111 (quoting *McComb v. Wambaugh,* 934 F.2d 474, 381 (3d Cir. 1991)).

There is no question that USAA is subject to the FHA. *See* 61 Fed. Reg. 50951, 50965 (Sept. 30, 1996) ("interests of borrowers are protected by the elaborate network of federal borrower-protection statutes applicable to federal thrifts, including . . . the Fair Housing Act.").[11] Nor is there a dispute that the FHA requires HUD to refer housing complaints to certified state agencies for investigation and prosecution. Thus, to the extent that OTS regulations would prohibit certified state agencies from investigating and prosecuting federal savings institutions, the regulations run afoul of the FHA's enforcement scheme established by Congress.

Because the OTS regulations cannot "trump" an act of Congress, we conclude that certified state agencies are permitted to investigate and prosecute federal savings and loan institutions as mandated by the FHA. To the extent, if at all, the OTS regulations conflict with this mandate, they cannot preempt the carrying out of federally mandated enforcement by the states.

Because the PHRA's antidiscrimination laws do not fall within the category of preempted state regulation listed in § 560.2(b) and only, if at all, incidentally effect lending

---

[11] USAA also concedes that it is subject to, among other federal statues, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f. *See,* 61 Fed. Reg. 50951, 50965.

activity, they are not preempted by OTS regulations. Even if we were to conclude that the PHRA is among the preempted state laws listed in § 560.2(b), they are still not enforceable because the OTS regulations conflict with the enforcement scheme of the FHA created by Congress.

**Visitorial Powers**

USAA contends that the PHRC's investigating Jacob's complaint pursuant to the enforcement provisions of the PHRA is an impermissible exercise of visitorial powers. It argues that because it is a federal banking institution subject to the exclusive authority of the OTS, the PHRC may not compel its compliance with state regulations.

Because the PHRA is not preempted by HOLA or OTS regulations and the PHRC's investigation is an exercise of delegated federal power, the PHRC enforcement of the state statute is not an exercise of visitorial powers. *See Cuomo v. The Clearing House Ass'c., L.L.C.,* 129 S.Ct. 2710, 2718 (2009) ("[I]f a state statute is valid as to national banks, the corollary that it is obligatory *and enforceable* necessarily results.") (emphasis in original) (internal quotations and citations omitted). Unless it can investigate the complaint against USAA, the PHRC cannot fulfill its federal mandate. Thus, we determine that the PHRC's investigation is not an impermissible exercise of visitorial powers.

**Conclusion**

Because the FHA mandates that HUD refer investigations of housing discrimination to state enforcement agencies with "substantially equivalent" laws, the PHRC's investigation of Jacob's complaint against USAA is not preempted by federal law. The OTS regulations do not override this congressional mandate. Therefore, we shall deny USAA's motion and grant PHRC's motion.